UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
SECURITIES AND EXCHANGE COMMISSION,                         :
                                                            :
                        Plaintiff,                          :
                                                            :     05 Civ. 5880 (GEL)
        -against-                                           :
                                                            :     **OPINION AND ORDER**
PATRICK A. GROTTO and                                       :
MARK B. LEFFERS,                                            :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

In this action for enforcement of federal antifraud securities laws, Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, the Securities and Exchange Commission ("SEC") moves for summary judgment against defendants Patrick A. Grotto and Mark B. Leffers. The SEC contends that no issue exists for trial, as all material facts were resolved in a prior state civil action and defendants should be collaterally estopped from relitigating them. Defendants, who appear *pro se*, oppose this motion primarily on the ground that it would be unfair to apply collateral estoppel to this case. They further protest that the action is untimely.

For the reasons below, the SEC's motion is granted, and judgment in the form of injunctive relief, disgorgement, and monetary penalties will be awarded as sought.

## BACKGROUND

On June 24, 2005, the SEC filed a complaint charging Grotto and Leffers with fraudulent conduct in connection with the June 2000 initial public offering ("IPO") of Busybox.com, Inc.

("Busybox"), a now defunct corporation that was then headquartered in California.[1]  The complaint charges that defendants violated Section 17(a) by employing fraud in the offer or sale of securities and Section 10(b) and related Rule 10b-5 by engaging in deceptive practices or schemes in connection with the sale of securities.  Defendants are accused of acting with the scienter necessarily associated with certain of these allegations, namely intent to deceive, manipulate, or defraud, or recklessness.  See Aaron v. SEC, 446 U.S. 680, 696-97 (1980), Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976), and Edward J. Mawod & Co. v. SEC, 591 F.2d 588, 595-97 (10th Cir. 1979).

The complaint alleges a course of conduct identical to that alleged and proved in a California civil action previously brought by a private investor, Bernard J. Carl.  Carl had charged Grotto and Leffers, among others, with making numerous material misrepresentations and omissions in prospectuses and SEC filings ("Offering Documents") relating to the Busybox IPO, along with other illegal acts.  Following a bench trial, the Honorable Richard L. Fruin of the Superior Court for the State of California, County of Los Angeles, found that from approximately early 1999 through fall 2000 Grotto had served as Busybox's chairman and chief executive officer, while Leffers had served as chief financial officer, treasurer, and controller.  In those positions, the court found, Grotto and Leffers had prepared, signed, and disseminated to potential investors Offering Documents that they knew to be fraudulent in the following ways:

---

[1] Facts in this opinion derive primarily from P. Ex. D, Carl v. Busybox.com, Inc., No. BC 255358 (Cal. Super. Ct., Sept. 1, 2005) ("Carl Decision"); P. Ex. E, Judgment in Carl, No. BC 255358 (Cal. Super. Ct., Oct. 24, 2005) ("Carl Judgment"); see also P. Stmt. of Facts Not in Issue, for citations to record evidence.  To the extent that defendants contest the findings of the Carl Court, their denials are rejected pursuant to the doctrine of collateral estoppel, as discussed below.

The documents falsely stated that an outside underwriter had purchased all of Busybox's IPO securities, when actually defendants and other insiders schemed to purchase 20 percent, or some $2.5 million, in unsold Busybox securities using proceeds from the IPO itself; they falsely reported an estimated $375,000 in legal fees payable from proceeds of the IPO, when an existing retainer agreement then known to defendants entitled counsel to at least $960,000; they falsely overstated, given defendants' purchasing scheme, net IPO proceeds by some $2.5 million; and, they failed to disclose that a substantial portion of IPO proceeds would be given to Busybox executives, including Grotto and Leffers. The Offering Documents were created between June 1999 and June 26, 2000; on June 30, 2000, Grotto and Leffers signed a Certificate of Officers and Directors certifying that the Offering Documents did not contain any material misrepresentations or omissions and that there was no known "material adverse effect" from those documents. (Carl Decision at 12.)

The Carl Court also found that Grotto and Leffers, as part of the scheme to make up for the deficient underwriting, had received IPO stock worth $307,500 and $215,250, respectively. Also from the IPO proceeds, Leffers paid himself $94,757.70 and Grotto $132,383.44. Defendants left Busybox four months after the close of the IPO, but before then they additionally took unauthorized payments of tens of thousands of dollars each, substantially from the IPO proceeds.

Upon finding these facts and others, Judge Fruin determined that Grotto and Leffers were liable for statutory fraud, common law fraud, fraudulent concealment, and violations of Section 11 of the federal Securities Act in connection with the Busybox IPO. He ordered Grotto to pay damages, attorneys' fees, costs, and interest, including punitive damages of $1 million, for a total

judgment of $2,486,809.34.  Leffers was similarly ordered to pay, including punitive damages of $500,000, a total judgment of $1,986,809.34.

Defendants received notice of the trial, but did not appear.[2]  Despite defendants' apparent default, the court based its judgment on a detailed, explicit consideration of the substantial evidentiary record, which defendants were able to and did participate in establishing via pretrial litigation.  Both Grotto and Leffers failed to appeal within 60 days of being served with a filed, stamped copy of the Carl Judgment, rendering that judgment final.  See Rule 2, California Rules of Court; see, e.g., In re Harmon, 250 F.3d 1240, 1246 (deeming final for the purposes of collateral estoppel a prior California trial court's judgment, because defendant in that case had failed to file a timely appeal); (see also P. Exs. E, M).

## DISCUSSION

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party.  Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001).  The moving party bears the burden of establishing the absence of any genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In deciding a summary judgment motion, the court must "resolve all ambiguities and draw all reasonable references in the light most favorable to the party opposing the motion."

---

[2] Defendants now protest that they did not receive notice of trial.  Their contention is rejected as meritless, for reasons discussed below.

Cifarelli v. Vill. Of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).  Moreover, the court is not to make any credibility assessments or weigh the evidence at this stage.  Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).  Further, the supporting papers of a *pro se* litigant should be liberally interpreted "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994).

The nonmoving party, however, may not rely on "conclusory allegations or unsubstantiated speculation."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd.,  v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and rather show that there is "significant, probative evidence" on which a reasonable factfinder could decide in its favor.  Anderson, 477 U.S. at 247-48.

Defendants do not contest that the facts found by the Carl Court would sustain summary judgment that they committed the federal securities law violations here alleged.  Nor do they dispute that the judgment sought would be proper on the basis of those findings.  Instead, they confine their opposition to protesting the application of collateral estoppel to this case and to asserting defenses and denials only viable if they are not estopped from relitigating.  Additionally, they assert that the SEC's action is time-barred.  Their efforts entirely fail.

I.  Collateral Estoppel

The doctrine of "nonmutual offensive collateral estoppel" was approved by the Supreme Court in Parklane Hosiery Company, Inc. v. Shore.  United States v. Mendoza, 464 U.S. 154, 157 (1984) (citing 439 U.S. 322, 331 (1979)).  Collateral estoppel generally precludes a party from relitigating in a second case issues "actually litigated and necessary to the outcome" in a

prior case, even where the causes of action in the two cases are different. 439 U.S. at 327 n.5. Parklane permitted plaintiffs as well as defendants to rely on collateral estoppel, even where, as here, the plaintiff seeking preclusion in the second action was not a party to the first. See id. at 329-332. Trial courts enjoy "broad discretion" in deciding whether to apply the doctrine, with the caveat that preclusion should be avoided where applying it would be "unfair to a defendant." Id. at 331.

The collateral effect of a state-court judgment in a federal court must be determined under the deciding state's law of preclusion. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). In California, a party asserting collateral estoppel against another must show: (1) that there is identity between the party sought to be precluded and the relevant party in the prior case, (2) that the relevant issues are identical, (3) that the relevant issues were actually litigated in the prior proceeding, (4) that the relevant issues were necessarily decided in the prior case, and (5) that the decision in the prior case is final and on the merits. See Lucido v. Superior Court, 795 P.2d 1223, 1225 (Cal. 1990).

The SEC has successfully shown all of these elements. (See P. Mem. 9-17.) In particular, it has demonstrated that the scienter necessary to sustain the requested relief was found in Carl. Judge Fruin made numerous findings regarding defendants' knowledge and intent, including that they had committed common law fraud and fraudulent concealment. (See Carl Decision.)[3] He found, among other facts, that "Grotto and Leffers participated in the

---

[3] See also Lazar v. Superior Court, 12 Cal. 4th 631, 638 (Cal. Sup. Ct. 1996) (To prove common law fraud under California law, a plaintiff must establish misrepresentation, defendant's knowledge of that misrepresentation, defendant's intent to defraud plaintiff, reasonable reliance by the plaintiff, and resulting injury to the plaintiff.); Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 612-13 (Cal. Ct. App. 1992) (To prove fraudulent

dissemination of false and misleading statements and omissions in the IPO Offering Documents intentionally, and with the specific intent to deceive prospective investors of Busybox, with knowledge and belief that said investors would rely upon the representations set forth in the [documents]." (Id. at 15.)  In awarding punitive damages, Judge Fruin found by clear and convincing evidence that defendants had "acted with malice, fraud or oppression with regard to intentional misrepresentations and concealment in connection with the . . . IPO" and "with full knowledge that the . . . IPO Offering Documents violated federal and state securities laws." (Id. at 18.)  The SEC correctly argues that these findings of defendants' intent and knowledge "more than satisfy the elements of the federal antifraud provisions" invoked here.  (P. Mem. 12.)  See, e.g., Pittsburgh Terminal Corp. v. Baltimore & Ohio Railroad Co., 680 F.2d 933, 942 (3d Cir. 1982) ("A violation of section 10(b) does not require a specific intention to break the law.  It requires only knowing or intentional actions which, objectively examined, amount to a violation.")  These facts, among others in the record cited by the SEC, satisfy the state-law based collateral estoppel criteria and establish facts justifying summary judgment in this case.

Defendants do not contest the applicability of California's law of collateral estoppel or the SEC's showing under that law.  Instead, they appear to argue that, regardless of satisfaction of the California standard,[4] application of nonmutual offensive collateral estoppel to this case

---

concealment under California law, a plaintiff must show that defendant concealed or suppressed a material fact, that defendant was under a duty to disclose that fact, that plaintiff would have acted differently if apprised of that fact, that defendant failed to disclose intentionally and with the purpose of defrauding plaintiff, and that plaintiff suffered damages as a result of the concealment.).

   [4] Recognizing that defendants appear *pro se*, this Court construes their arguments, even where not explicit, as favorably as is reasonable.  These arguments could also be taken to question the "actually litigated" prong of the Lucido test; the following discussion of procedural

would be unfair.  (See Grotto Mem. 8-9; Leffers Mem. 6-7.)  They rely entirely on the caveat of Parklane, which counsels courts to avoid applying "offensive estoppel . . . where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result" – a scenario that might arise if "the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses."  Id. at 331, n.15 and accompanying text.  In that case, defendants in an underlying stockholders' action were estopped from relitigating issues that had previously been decided on allegations of the government, because they "received a full and fair opportunity to litigate their claims in the SEC action."  Id. at 332-33 (internal quotation marks omitted).  The defendants "had every incentive to litigate the [prior] lawsuit fully and vigorously" and would not find in the second proceeding any procedural opportunities that had been unavailable in the first.  Id. at 332.

Grotto and Leffers fail to make any showing that approaches the kind of unfairness contemplated by Parklane.  They argue that the California litigation unfolded in an "inconvenient forum," because at the time they lived in Europe or on the East coast.  (See Grotto Mem. 8; Leffers Mem. 6.)  Yet they offer no evidence that they were therefore subjected to the kind of procedural prejudice – inability "to engage in full scale discovery or call witnesses" – that concerned the Supreme Court in its footnote to an otherwise broadened approach to estoppel.[5]

---

fairness addresses this concern, as well.

[5] Defendants' theory of inconvenience – stopping at mere logistical difficulty to a party, without any showing of legal impact – would operate as a sweeping bar to the application of collateral estoppel.  The parties do not point to any case law that applies Parklane's notion of prejudice so broadly, nor has the Court discovered any.  Rather, the Second Circuit has construed the fairness caveat to prohibit the application of offensive collateral estoppel where, for instance,

Id. at 331, n.15.  Indeed, they do nothing to counter the ample evidence to the contrary: that they submitted answers in the Carl case, engaged in pretrial motion practice, and participated in discovery by giving deposition testimony and monitoring other witnesses' deposition testimony. (See P. Stmt. of Facts Not in Issue ¶ 23 for citations to record.)  In short, they well employed the procedural opportunities that would be available in this subsequent case.[6]  Defendants do not deny that Carl's complaint, alleging significant damages, furnished ample incentive for them fully and vigorously to defend that action.  (See P. Ex. L, Second Amended Complaint in Carl.)

The record does not indicate, nor do defendants contend, that they ever challenged the California court's jurisdiction to render a judgment against them or otherwise questioned the appropriateness of the California forum.[7]  In any event, the record establishes that jurisdiction existed and that the California court properly undertook to hear the case.

---

two actions present "substantially disparate opportunities for discovery and differing burdens [of proof] . . . unless it is shown that these differences would not affect the outcome" of the second action.  Sprecher v. Graber, 716 F.2d 968, 972 (2d. Cir. 1983).  Grotto and Leffers show nothing to meet such a standard.

[6] Defendants' opportunity to litigate in a trial setting is discussed below.

[7] To the extent that defendants' "inconvenient forum" argument may be construed to invoke the doctrine of *forum non conveniens*, it is rejected both as waived and as unpersuasive on its merits.  That doctrine permits a court in its discretion to dismiss a case over which it otherwise has jurisdiction, based on a showing that an alternative, available forum would be more convenient.  Convenience is not measured in the colloquial sense of ease, but rather constitutes an issue of justice in light of factors such as the relative availability of material witnesses and evidence as between the two fora.  Even if the balance of convenience by such measures weighs in favor of the defendant, cases are dismissed on this ground only in exceptional circumstances, given the respect accorded a plaintiff's choice of forum.  See, e.g., Norwood v. Kirkpatrick, 349 U.S. 29 (1955); U.S. v. National City Lines, 334 U.S. 573 (1948); Fitzgerald v. Texaco, Inc., 521 F.2d 448 (2d. Cir. 1975).  There is no indication that Grotto or Leffers ever moved to dismiss the California action on this (or any) ground, that a different forum might have been more convenient in the doctrinal sense, or that defendants at the time ever raised that they could not litigate as they wished because of the action's location.

The constitutional test for personal jurisdiction demands that "maintenance of the suit . . . not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). That standard, in the context of a state court's exercise of personal jurisdiction over a nonresident defendant, requires only that "minimum contacts" exist between that nonresident and the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A single act by a defendant in the forum state may suffice to meet that requirement, where the defendant has availed itself of the privilege of conducting business activities in that state. Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Here, defendants do not dispute the SEC's showing that they engaged in significant, self-benefitting business activities in California such that they should by any reasonable measure have anticipated being haled into California's courts. They served as directors and officers in a corporation headquartered in California, and they offered and sold hundreds of thousands of dollars' worth of securities of that corporation, including in California. (See Carl Decision at 15-16.) Nothing in the record suggests the slightest unfairness or injustice in California's exerting jurisdiction over these defendants. Defendants' own business activities exposed them to the reach of that state's courts.

Construed liberally, defendants' unfairness arguments could also be taken to claim a violation of procedural due process, in that defendants purport never to have received notice of the Carl trial and thus implicitly argue that they were deprived of a meaningful opportunity to be heard. See, e.g., Goldberg v. Kelly, 397 U.S. 254, 267 (1970) (discussing elements of procedural due process). They mention the withdrawal of their counsel, who had been retained by their

insurer but withdrew upon exhaustion of the insurance policy some three years prior to trial, and claim that their interests were thereafter inadequately represented. (See Leffers Mem. 9; Grotto Mem. 8.) These arguments also do not warrant denying collateral estoppel in this case.

Leffers avers that he never received notice of the trial. (Leffers Affidavit ¶ 4). Yet his statement fails to negate the overwhelming basis in the record for concluding that he was, in fact, on notice of trial and that application of collateral estoppel is thus not unfair on this ground. The SEC submits the California court's finding of timely and proper notice of trial, an affidavit of service of such notice on Leffers, and evidence of service on Leffers of a Notice of Ruling that included the setting of a trial date. (See Carl Decision at 1-2; P. Ex. Y, Affidavit of Service of Notice of Trial on Mark B. Leffers; P. Ex. Z, December 21, 2004, Notice of Ruling in Carl.) Other than claiming lack of notice, Leffers does not contest the validity of these submissions. Nor does he ever suggest that he was unaware that his counsel had withdrawn or that he otherwise was surprised that litigation continued after that date. Indeed, evidence of his substantial participation in pretrial litigation, as noted above, alone suffices to establish that he was on notice that trial would eventually ensue. There is no reason to doubt that he would have enjoyed ample opportunity to be heard and challenge the case against him, had he appeared at trial; indeed, the record shows that several of his co-defendants exercised such opportunity in a jury trial in the same court. (See Carl Judgment at 2.) There is no evidence that Leffers ever complained to the Carl Court about its decision or judgment against him, and he does not contest the SEC's submission showing his failure to appeal. (See P. Exs. E, M.)

The foregoing reasons, and more, may be applied also to reject Grotto's claim of inadequate notice of trial. He swears that notice was served at an incorrect apartment in the

correct building but offers no support for the claimed proper address, and he submits an affidavit of non-service to a business address. (Grotto Affidavit ¶ 4; Grotto Ex. A.) Yet the evidence of notice, lack of surprise, and opportunity to litigate submitted by the SEC as to Leffers was also submitted as to Grotto.[8] (See Carl Decision at 1-2; Carl Judgment at 2; P. Exs. E, M, Z.) Besides generally claiming he lacked notice of trial, Grotto does not contest the authenticity or existence of this evidence. Moreover, Grotto does not even address, much less challenge, an affidavit showing that he was served with actual notice of trial *in person*. (P. Ex. CC, Affidavit of Service of Sean Greene.) Defendants fatally fail to refute that the balance of the record amply demonstrates notice.

Because Grotto and Leffers may more than reasonably be charged with notice on this record, they may also, like *pro se* defendants far less savvy than they, be charged with the responsibility for choosing whether to litigate at trial. Defendants – sophisticated businessmen who may be presumed to have been aware of their own logistical limitations, insofar as they claim such limitations here – do not indicate that they ever signaled the California court in any way that they feared being prejudicially affected by the withdrawal of their counsel or that they otherwise felt hampered in their ability to continue litigation. The evidence well demonstrates that defendants neither lacked notice nor were deprive of the opportunity to litigate in the Carl case and that it would not therefore be unfair to apply those findings in estoppel. See, e.g., In re Cantrell, 329 F.3d 1119, 1123-24 (9th Cir. 2003) (explaining that even a default judgment is entitled to preclusive effect under California law, if defendant had notice of the proceeding and a

---

[8] The Affidavit of Service of Notice of Trial on Mark B. Leffers is, of course, taken only as to Leffers. (See P. Ex. Y.)

"full and fair opportunity to litigate") (internal quotation marks and citations omitted); see also In re Catt, 368 F.3d 789, 791-92 (7th Cir. 2004) (holding that collateral estoppel may be applied based on underlying state-court default judgment against debtor in subsequent bankruptcy proceeding, given Indiana's law of preclusion) (also noting similarity of law in other states, including California). The application of collateral estoppel in this case comports with constitutional and jurisprudential standards of fairness.

II. Defense of Good-Faith Reliance on Advice of Others

As there is no reason not to apply nonmutual offensive collateral estoppel to this case, defendants are estopped from relitigating the chief substantive defense they assert here: that they committed the acts alleged in good-faith reliance on the advice of others. (See Grotto Mem. 9-14; Leffers Mem. 6-10.) Defendants had notice of substantially similar allegations in the California court and had opportunity to advance this defense in that case. Indeed, the SEC shows – and defendants do not dispute – that defendants in fact *did* introduce evidence of such good-faith reliance in the prior litigation. (See P. Reply Mem. 7, for citations to Grotto and Leffers depositions and other record evidence at P. Exs. U, V, W, DD.)

Moreover, the Carl Court's findings implicitly but necessarily reject this defense. That court's judgment that defendants' actions constituted common law fraud and fraudulent conduct, warranting punitive damages, required findings of knowing, intentional, bad-faith conduct that necessarily collide with any defense of good-faith reliance. Further, the California court expressed awareness of related illegal conduct by the individuals defendants reference in their attempted defense: Judge Fruin noted that a jury had returned a verdict against attorney Jon Bloodworth and that attorney Thomas Prousalis had pleaded guilty to criminal charges. (Carl

Decision at 2-3, 10-11.) In any case, the court made specific findings of individually culpable conduct by Grotto and Leffers. The findings of that court, collaterally applied to this case, are sufficient to dispose of defendants' last-ditch claim of good-faith reliance.

III. Timeliness of SEC Action

Finally, on the sole issue not addressed in, and thus not precluded by, the Carl litigation, defendants argue that the SEC must forgo judgment because its action is untimely. (See Grotto Mem. 14-17; Leffers Mem. 10-12.) However, as the SEC points out, no authority exists to draw a time limit on the instant allegations. (See P. Reply Mem. 8.) The only potentially applicable limitations period is the five-year bar of 28 U.S.C. § 2462, which begins from "the date when the claim first accrued" in situations where Congress has not expressly stated an endpoint and except where the government's claim is for equitable relief. See, e.g., United States v. Banks, 115 F.3d 916, 919 (11th Cir. 1997) (construing 28 U.S.C. § 2462). The facts bring this case within that time frame, with the least favorable accrual date, June 27, 2000, falling within five years of the June 24, 2005, filing of the SEC's complaint.[9] (See P. Reply Mem. 9-10 and accompanying citations to record evidence.) Defendants make no showing contesting these dates. There is thus no dispute of material fact as to the SEC's timeliness in bringing this action.

Defendants' assertions of disputed material facts generally amount to mere denials or utterly unsupported alternative explanations of the culpable conduct already found by the

---

[9] The SEC correctly argues that defendants cite inapposite authority for their theory of an earlier point of accrual and that, even under that mistaken theory, accrual falls as a matter of law within the only statutory period possibly applicable here. (See P. Reply Mem. 9, n.4.)

California court to have occurred.[10] (See Grotto's and Leffers's Affidavits and Responses to P. Stmt. of Facts Not in Issue.) Moreover, their statements are conclusory at best and at worst spurious. See Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 370 n.3 (2d Cir. 2003) (noting that "conclusory statements" and "frivolous, gauzy, spurious, . . . speculative" submissions are inadequate to establish the "material" and "substantial" showing necessary to survive summary judgment) (internal quotation marks and citations omitted). These assertions cannot show the existence of any genuine issue of material fact, as they do not nearly constitute "significant, probative evidence" on which a reasonable factfinder could reach a decision in defendants' favor. Anderson, 477 U.S. at 247-48.

## CONCLUSION

Defendants have grasped at straws, and the straws have snapped. For the foregoing reasons, the SEC's motion for summary judgment against defendants Grotto and Leffers is granted in its entirety, and remedies will be awarded as requested.

SO ORDERED.

Dated: New York, New York
      October 24, 2006

                                                    _____
                                                    GERARD E. LYNCH
                                                    United States District Judge

---

[10] Leffers submits a one-page invoice for legal fees of then counsel to Busybox, Prousalis, which, even if not barred by collateral estoppel, would fail to constitute a ground for decision in his favor. (Leffers Ex. 1.) He also submits an unexecuted, unsigned, and undated document supposedly created by a law professor, also barred, and which in any case expressly lacks factual testimony and is inadmissible. (Leffers Ex. 2.)